UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07 CR 39 HEA |
| ) | DDN |
| RODERICK SILINZY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 27, 2007.

**1. Pretrial disclosure of evidence.**

Defendant Roderick Silinzy has moved for disclosure of impeaching information (Doc. 18), for fingerprint examination of firearm (Doc. 19), to re-weigh drug evidence (Doc. 20), and for notice of intent to use and description of Rule 404(b) evidence (Doc. 21).

At the hearing, in response to these motions, counsel for the government indicated that it will provide defendant with any discoverable, impeaching information and that the government will provide the defendant with a description of any Rule 404(b) evidence. Therefore, those motions will be denied as moot.

Also, at the hearing, counsel for the United States, with the approval of the defendant, stated that fingerprint analysis of the subject firearm will be performed by the St. Louis Police Department at the expense of the defense. Therefore, this motion will be sustained.

Further, defendant agreed that the motion for the re-weighing of the drug evidence is moot. Therefore, it will be denied as moot.

## 2. Motions to suppress evidence.

Defendant has moved to suppress evidence (oral motion filed February 21, 2007, and Doc. 16); and the government has moved for a hearing on suppression issues (oral motion filed February 21, 2007).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On December 8, 2006, St. Louis Metropolitan Police Detective Michael Venker began investigating the burglary of a police officer's home in south St. Louis City. The officer's police Beretta pistol, a police radio, and his credit cards were stolen. In their investigation, the police learned that the officer's credit card was used between December 8 and December 19. Sometime between 9:00 and 10:00 a.m. on December 19, John Thebeau was arrested for using the officer's stolen credit card. When arrested, police found approximately eight firearms in the stolen truck Thebeau was driving.[1] The firearms had been recently stolen in burglaries in Illinois and St. Louis County. Following his arrest, Thebeau was questioned at the Area 1 police station and gave statements, believed by the police to be truthful, about the burglaries in Illinois and in St. Louis County. He also admitted to burglarizing the St. Louis police officer's residence. He told the police where the St. Louis officer's police radio could be found; he had thrown it in a trash container in the laundromat of a hotel where he had been staying in St. Louis County. The police were able to recover the radio from the manager of that hotel who had found it in the trash. Thebeau also identified other homes he had burglarized.

2. When asked by the police about the stolen St. Louis City police officer's firearm, Thebeau said he sold it to someone known to him as both "G-Money" and "Money", who lived on Liberty, for $100. Thebeau described G-Money to the police and said he had bought crack cocaine from G-Money in the past. Thebeau took the police and showed

---

[1] Present with Thebeau in the truck was a 15-year-old female.

them the house on Liberty where G-Money was living.  Thebeau also gave the police G-Money's cell phone number.  With the information provided by Thebeau, from police reports and a police data base, the police were able to identify G-Money as defendant Roderick Silinzy.  The police showed Thebeau a photo of Silinzy and he identified him as the person to whom he sold the officer's firearm.

    3.    Later on December 19, 2006, still the same day as Thebeau's arrest, Det. Linn Laird applied for a search warrant for 3241 Liberty in the City of St. Louis.  In support of the application, Laird submitted his sworn, written affidavit to Circuit Judge Elizabeth Hogan.  In his affidavit, Det. Laird recounted the investigation of the burglary of the police officer's home on December 8, the statements made by John Thebeau, the information that led to the identification of Roderick Silinzy as the person to whom the officer's firearm was sold, first person statements by Thebeau that he bought crack cocaine from Silinzy at 3241 Liberty on December 19 and that at that time Silinzy still had the officer's stolen firearm, and police surveillance observations of short term visitors to 3241 Liberty which indicated trafficking in illegal drugs.  The affidavit also stated that, based on the information provided by Thebeau, the police recovered the officer's stolen police radio at a Motel 6 in South St. Louis County.  See Gov. Ex. A at 3-4.  Upon this affidavit, Judge Hogan issued a search warrant around 10:00 p.m. on December 19, 2006, for 3241 Liberty, authorizing a search for a specifically identified Beretta pistol and crack cocaine.  Id. at 1.

    4.    In the execution of the search warrant later on December 19, the police went to 3241 Liberty, which was a brick, narrow, "shotgun" type[2] building.  With the investigating detectives were Mobile Reserve officers whose duty was to effectuate the entry and securing of the premises.  After that was accomplished, the investigating officers entered.  They encountered Roderick Silinzy, his girlfriend, and his mother in the basement of the residence, where his bedroom was located.  The police identified themselves and showed him the search warrant.

---

    [2]This style residence features several rooms, one behind the other, from the front door entrance.

- 3 -

Without being asked any questions, Silinzy said the bedroom was his. They took his girlfriend upstairs. The police then searched the bedroom. In the search, they found and seized drugs, a laptop computer, several guns, a camcorder, a camera, other electronic appliances, and a piece of mail. Id. at 5.

5.  After the discovery and seizure of these items, the officers formally arrested Silinzy, who remained in the basement with the police, for possession of the drugs and for receiving stolen property. At that time Det. Venker orally advised Silinzy of his constitutional rights to remain silent and to counsel, by reading them to him from a card. Defendant said he understood his rights. He did not appear to the officer to be intoxicated by drugs or alcohol. Silinzy made appropriate answers to the questions and statements of the police. The police made no threats or promises to Silinzy to induce him to cooperate. Silinzy did not request an opportunity to use the bathroom or ask for food. In response to questions, Silinzy made statements to the officer. Silinzy said he bought the guns from a white "crack head" by the name of John. During the interview, because the stolen police weapon was not among the weapons seized from the bedroom, Det. Venker asked Silinzy whether the same person who sold him the other guns also sold him a 9 millimeter pistol. Silinzy responded, "You mean the cop's gun? I gave it to my brother, Trey, to hold." When they were finished at 3241 Liberty, 30 to 40 minutes after the initial police entry, Silinsky took the officers to Trey's house on Louisiana in the City of St. Louis. There officers spoke with Trey. The officers recovered the officer's firearm at yet a different location, a vacant residence on DeSoto.

### DISCUSSION

**A. Physical Evidence**

The search at 3241 Liberty, and subsequent seizure of the drugs, guns, laptop, camcorder, camera, other electronics, and piece of mail, was lawful because the officers were acting pursuant to a valid search warrant.

The issue before this court when reviewing the validity of the issuance of a search warrant by a judge of another court is whether the

supporting materials gave the issuing judge a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999).

The search warrant issued on December 19, 2006 was supported by an affidavit that provided a substantial basis for finding probable cause to believe that the Beretta pistol and crack cocaine would be found at 3241 Liberty. The affidavit details the investigation of the burglary of the residence where the police pistol was stolen, and how that investigation led to the arrest of Thebeau. Thebeau admitted to committing the burglary and taking the pistol, police radio and credit card. Thebeau stated he sold the pistol to a man he later identified as defendant Silinzy. He also stated that he bought crack cocaine from Silinzy at his residence at 3241 Liberty. The officers performed surveillance on the residence and saw people arrive and leave the residence after a short time, which, in the officers' experience was indicative of drug activity.

Defendant argues that the affidavit does not contain sufficient facts about Thebeau's credibility. Information provided by an informant can be proven reliable from either a track record of supplying information, or from independent evidence. United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998). The affidavit contains facts of Thebeau's reliability. Thebeau's story was corroborated because he also told police he stashed the stolen radio in a trash can at a Motel 6, where it was later recovered. His story of selling the gun for crack was also corroborated by the officers seeing signs of drug activity at the home.

These facts were sufficient to support probable cause for the issuance of the warrant. Defendant does not argue that the officers

searched beyond the scope of the warrant. Therefore, the physical evidence found at 3241 Liberty should not be suppressed.

The gun found at the vacant house on DeSoto should not be suppressed. The defendant has no standing to challenge the search of a vacant house. A defendant cannot challenge the constitutionality of a search and seizure unless he has a reasonable expectation of privacy in the area searched. United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). Factors to be considered are whether defendant had a possessory interest in the area searched or the thing seized. Id.

Here, there are no facts that indicate Silinzy had any reasonable expectation of privacy in the vacant home. There is no indication that he lived there or that he had ever even been there. See United States v. Dodds, 946 F.2d 726, 728-29 (10th Cir. 1991) (no reasonable expectation in vacant apartment, even if defendant slept there occasionally). He had also relinquished possession of the gun to his brother.

Therefore, the gun should not be suppressed.

**B. Statements**

The government has the burden of establishing the admissibility of a defendant's statements by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972); Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The first issue is whether the defendant's statements were voluntary or involuntary. Statements are constitutionally involuntary if they are the result of government overreaching, such as mental or physical coercion, deception, or intimidation. Colorado v. Connelly, 479 U.S. at 169-70; United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).

Defendant's statement, that the bedroom was his, should not be suppressed. "Voluntary statements of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by Miranda and its progeny." United States v. Wood, 545 F.2d 1124, 1127 (8th Cir. 1976). He was not asked any question when he made this statement, and it should not be suppressed.

Thereafter, Det. Venker advised defendant of his constitutional rights to remain silent and to counsel, as prescribed by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Silinzy stated that he understood these rights. He waived the rights by making statements, and there are no facts indicating government coercion or overreaching to suggest that his statements were not made voluntarily. <u>United States v. Junkman</u>, 160 F.3d 1191, 1194 (8th Cir. 1998) (coercive police conduct needed to find statements involuntary). The statements should not be suppressed.

Whereupon,

**IT IS HEREBY ORDERED** that the motion of the government for a hearing on suppression issues (oral motion filed February 21, 2007) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant for the fingerprint analysis of the subject firearm (Doc. 19) is sustained in that said examination will be performed by the St. Louis Police Department at the expense of the defense.

**IT IS FURTHER ORDERED** that the motions of defendant for disclosure of impeaching information (Doc. 18), to re-weigh drug evidence (Doc. 20), and for notice of intent to use and description of 404(b) evidence (Doc. 21) are denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence (oral motion filed February 21, 2007, and Doc. 17) be denied.

The parties are advised they have until April 19, 2007, to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

**ORDER SETTING TRIAL DATE**

As directed by the District Judge, this matter is set for a jury trial on the docket commencing May 21, 2007, at 9:30 a.m.

                                              /S/ David D. Noce
                                        **DAVID D. NOCE**
                                        **UNITED STATES MAGISTRATE JUDGE**

Signed on April 5, 2007.